OPINION OF THE COURT
Stephen G. Crane, J.
This is an action for an injunction under Labor Law § 201-d with demands for related monetary relief and punitive dam *373 ages. Plaintiffs, a union and its designated General Job Steward, Dominic R. Claps, move for preliminary injunctive relief to enjoin defendant, referred to as the "Javits Center”, from discriminating against union carpenters and shop stewards designated by the union. Pending determination of the motion a temporary restraining order has been imposed restraining the Javits Center from violating Labor Law § 201-d "by discharging and refusing to employ union shop stewards designated by the District Council and union Carpenters in the terms, conditions or privileges of employment at the Javits Center.”
Labor Law § 201-d, added by Laws of 1992 (ch 776), prescribes, in pertinent part:
"2. Unless otherwise provided by law, it shall be unlawful for any employer * * * to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of:
"a. an individual’s political activities outside of working hours * * *
"b. an individual’s legal use of consumable products prior to the beginning or after the conclusion of the employee’s work hours * * *
"c. an individual’s legal recreational activities outside work hours * * *
"d. an individual’s membership in a union or any exercise of rights granted under Title 29, USCA, Chapter 7 or under article fourteen of the civil service law.”
The term "work hours” that appears in paragraphs (b) and (c), and presumably intended to embrace the phrase "working hours” in paragraph (a), is defined as "all time, including paid and unpaid breaks and meal periods, that the employee is suffered, permitted or expected to be engaged in work, and all time the employee is actually engaged in work.” (Labor Law § 201-d [1] [c].) Finally, of relevance to this motion, subdivision (4) provides that "an employer shall not be in violation of this section where the employer takes action based on the belief * * * that (ii) the employer’s actions were permissible pursuant to an established * * * collective bargaining agreement.”
The Bill Jacket for this legislation makes quite clear that this section was designed to prevent discrimination against *374 employees for their activities outside of working hours. Governor Cuomo, in approving the legislation that became section 201-d, said as much in his memorandum of August 1992: "[T]hese bills * * * properly strike the difficult balance between the right to privacy in relation to non-working hours activities of individuals and the right of employers to regulate behavior which has an impact on the employee’s performance or on the employer’s business.” (Governor’s Mem approving L 1992, ch 776, 1992 McKinney’s Session Laws of NY, at 2916.) Nevertheless, there is some significance to the omission in paragraph (d) of a reference to "work hours” that suggests that the prohibition against discrimination for union activities was not intended to be restricted to such activities in nonworking hours.
Be that as it may, Javits Center argues that a preliminary injunction under section 201-d is unavailable because it has a good-faith belief that its policies respecting designated shop stewards are protected by the Management’s Rights Article of the collective bargaining agreement and, thus, subdivision (4) (ii) immunizes it from a violation of section 201-d. Furthermore, Javits Center relies on Matter of Civil Serv. Empls. Assn. v City of Troy (— AD2d —, 1996 NY Slip Op 00582 [3d Dept, Jan. 11, 1996]). This case held that a controversy arising under a collective bargaining agreement will not support a CPLR article 78 proceeding charging a violation of Labor Law § 201-d. To analyze these contentions, we need to understand the heart of the dispute between plaintiffs and defendant.
Briefly stated, plaintiff union has the right under the collective bargaining agreement to designate one employee as the Job Steward and another one as the Working Deputy. Last October it designated four Deputy Job Stewards and in November it designated plaintiff Claps as General Job Steward. Since then, Javits Center has discharged and refused to employ these designated individuals. Plaintiffs argue that Javits Center must employ these designated representatives. Defendant, on the other hand, vigorously propounds its management rights under the collective bargaining agreement. Among these is the "right to refuse to employ any individual, in the Employer’s absolute and sole discretion.”
The dispute between the parties must be viewed in the context of the application for a preliminary injunction. New York public policy dictates that courts defer to the bodies that administer relevant statutory provisions and to the machinery, where applicable, collectively agreed upon to adjust labor griev *375 anees. These procedures defer the merits of such disputes to the agencies with special competence and expertise. (Uniformed Firefighters Assn. v City of New York, 79 NY2d 236, 241-242.) Largely for this reason, in article 78 proceedings, in contrast to a plenary action such as the case at bar, the doctrine of exhaustion of remedies plays an important role. (Matter of Civil Serv. Empls. Assn. v City of Troy, supra; Matter of Hosp v Seniuk, 86 AD2d 667, 668-669; Matter of Flemming v Cagliostro, 53 AD2d 187, lv denied 40 NY2d 806.)
The task that remains in this analysis, then, is to ascertain whether plaintiffs or either of them have any rights, independent of those under article 14 of the Civil Service Law and the collective bargaining agreement, for the violation of which Labor Law § 201-d supplies a remedy. As this court recognized at the oral argument of this motion, in suggesting that irreparable injury can arise from discrimination against an employee for union membership that goes beyond mere back pay, employees have under Federal and State law valuable rights to engage in collective activity. (E.g., Civil Service Law §§ 202, 203.) Discrimination chills, if not kills, these rights. Indeed, it is an improper practice for a public employer* to interfere with the right of public employees to organize. (Civil Service Law § 209-a.) The Public Employment Relations Board (PERB) has jurisdiction over improper employer practices. (Civil Service Law § 205 [5] [d].)
The collective bargaining agreement has a three-step grievance procedure ending in arbitration. "Grievance” is defined as "a dispute which arises after the effective date and prior to the expiration date of this Agreement concerning the meaning and application of the express written provisions of this Agreement.” (Art XI, § 1.) Without invading the grievance process or usurping the province of the arbitrator (cf., Matter of Saferstein v Wendy, 137 Misc 2d 1032, 1036, n 3), the court perceives a rational construction of the collective bargaining agreement that would relieve the very problem on which this action rests. Article XVI, § 2 expressly contemplates that the designated Job Steward and Working Deputy will be "working carpenters at the Javits Center”. It becomes a matter of contract interpre *376 tation to square that provision with the management "right to refuse to employ any individual, in the Employer’s absolute and sole discretion”. (Art V, § 2.) In addition, Javits Center vigorously proclaims that the dispute tendered in this action— whether the employer is required to hire the designated Job Stewards — is a matter of contract interpretation and susceptible to the grievance procedure. It will not oppose plaintiff union’s efforts to submit the issue to this procedure. Nevertheless, on the merits of this issue, it relies on the Management Rights Article of the collective bargaining agreement. Hence, it has a belief — whether or not meritorious remains to be seen — that its refusal to employ Claps and other designated Shop Stewards is permissible under the collective bargaining agreement.
Thus, under the authority of the City of Troy case (supra), and in the spirit of deferring to the agencies having special competence and expertise (Uniformed Firefighters Assn. v City of New York, supra), this court concludes that this action is unavailable to vindicate rights that are spelled out in the collective bargaining agreement. The City of Troy case is binding in the absence of any contrary authority in the Appellate Division, First Department. (1 Carmody-Wait 2d, NY Prac § 2:63.) Even though it was an article 78 proceeding decided on the basis of exhaustion of administrative remedies, the City of Troy case is the first appellate decision interpreting Labor Law § 201-d. This interpretation commands that if a controversy is covered by a collective bargaining agreement, the aggrieved party must pursue its contractual grievance procedure before pursuing remedies under section 201-d. Moreover, section 201-d (7) (b) authorizes an action for equitable relief and damages only by "an aggrieved individual”. This commonly understood phrase disqualifies the union as a party to this lawsuit. Accordingly, the plaintiffs are unable to qualify for preliminary injunctive relief under the tripartite test of Chrysler Corp. v Fedders Corp. (63 AD2d 567) and Albini v Solork Assocs. (37 AD2d 835). They have not established a likelihood of success on the merits.
In view of the absence of any appellate authority interpreting Labor Law § 201-d in this Department, the court will afford the plaintiffs a brief period to seek interim relief from the Appellate Division. For that purpose, the temporary restraining order shall remain in effect for five days following service of a copy of this order with notice of entry.
*377 Accordingly, it is ordered that the motion for a preliminary injunction is denied; and it is further ordered that the temporary restraining order is vacated five days following service of a copy of this order with notice of entry.

 The parties have proceeded on the assumption that Javits Center is a public employer as defined under section 201 (6) (a) of the Civil Service Law. Though not alleged in the complaint, the defendant appears to be a public corporation, agency or instrumentality exercising governmental powers. Defendant is "a body corporate and politic constituting a public benefit corporation.” (Public Authorities Law § 2562.)